[Civ. No. 4529. First Appellate District, Division One.—July 25, 1923.]

IRA KAHN et al., Respondents, v. MARYLAND CASUALTY COMPANY (a Corporation), Appellant.

[1] INDEMNITY BOND—ACTION ON—EVIDENCE—TELEPHONE CONVERSA-TIONS.—In this action to recover on an indemnity bond for the market value of certain Liberty bonds owned by and lost to plaintiffs, the purported maker of the check that was left with plaintiffs' clerk at the time the bonds were taken having testified that about the date of the loss of the bonds someone telephoned to him at his office in Los Angeles and questioned him as to his age, appearance, and his presence in San Francisco the day previous, plaintiff's clerk was properly permitted to testify that during the morning of the day following the loss of the bonds telephone communication was had by plaintiffs' office with the Los Angeles office of the purported maker of such check and it was ascertained that the purported maker of the check had not been in San Francisco the previous day.

[2] ID.— ACCEPTANCE OF CHECK — INFERENCE—EVIDENCE.—It having been brought out on cross-examination of plaintiffs' clerk that the check in question had been deposited in the bank, to rebut the inference that plaintiffs were acting on what they considered a valid check, plaintiffs were properly permitted to show, on the redirect examination of said clerk, that no conversation with anyone in the office of plaintiffs was had by him as to the validity of the check.

---

1. Conversation by telephone as evidence, notes, 1 **Ann. Cas.** 802; 9 **Ann. Cas.** 170; 20 Ann. Cas. 705; Ann. Cas. 1916E, 977; 6 **L. R. A.** (**N. S.**) 1180; **L. R. A.** 1918D, 720.

[3] ID.—LOSS OF LIBERTY BONDS—FINDINGS—EVIDENCE.—In this action to recover on an indemnity bond for the market value of certain Liberty bonds owned by and lost to plaintiffs, the evidence was such as to justify the finding of the trial court that the bonds were stolen, and not obtained through forgery as contended by defendant indemnity company.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge. Affirmed.

The facts are stated in the opinion of the court.

John Ralph Wilson and Charles B. Morris for Appellant.

Jesse H. Steinhart and John J. Goldberg for Respondents.

ST. SURE, J.—Action by plaintiffs on an indemnity bond of defendant for the market value of certain Liberty bonds owned by and lost to them. Judgment went for plaintiffs. Defendant appeals. Under the terms of the indemnity bond sued on defendant agreed to protect plaintiffs against any loss, not exceeding fifty thousand dollars, of bonds, debentures, scrip, certificates, or other similar securities, in which plaintiffs may have a pecuniary interest, or for which they are legally liable, sustained by the insured during the life of the agreement, through robbery, burglary, theft, or holdup, whether effected with or without violence, or with or without negligence on the part of any of the employees of plaintiffs. Another provision of the agreement reads as follows: "This bond does not cover any loss directly or indirectly effected by means of forgery, unless the forgery be committed by, or with the collusion of, one or more of the employees . . . " of the insured. Provision is made in the bond for the giving of notice of loss and for furnishing the indemnity company with an itemized statement thereof within a certain period after the loss suffered. These provisions were complied with and the claim in both instances rejected by defendant, whereupon this suit was brought.

The sole question presented by this appeal is whether the circumstances set forth show that the bonds for which indemnity is claimed were stolen, or whether their loss was due, directly or indirectly, to forgery without collusion of any

employee of the plaintiffs. The former is plaintiffs' contention, the latter defendant's.

Plaintiffs are copartners engaged in the stock and bond brokerage business in San Francisco as J. Barth & Co. They buy and sell securities for clients and charge a commission for so doing.

On November 15, 1920, a stranger entered the office of plaintiffs and asked to be sold Liberty bonds for cash. A clerk explained the method of buying the bonds for him through an exchange, and the stranger signed an order, filled in by the clerk, for Liberty bonds whose face value amounted to three thousand five hundred dollars, using the name E. Kennard. Later he telephoned asking if the bonds were ready. Without waiting for investigation he said he would be in later in the day. About 4 o'clock in the afternoon he returned and the same clerk attended him, who went to the cashier's cage to get the bonds and bill for the customer. The cashier being out he stepped into the cage himself and found the package of bonds for this particular customer with the bill and delivery tag attached. The customer had crossed the room so that he stood before the wicket of the cage. On being handed the bill the customer remarked that he had more money, asked the price of Standard Oil stock, and asked the clerk to take his order for two shares. With the Liberty bonds on the counter inside the grill of the cage, between the customer and himself, the clerk began writing an order for the Standard Oil stock. When he looked up again the bonds and the customer were nowhere to be seen, and on the counter before him was a "slip of paper," a check of the Standard Oil Company to the order of Kennard & Bierce, indorsed "Kennard & Bierce Per E. K." This check had not been tendered to the clerk in payment, and the statement of the customer had been concerning a transaction "for cash." The cashier's cage of plaintiff's office faces north. A counter separating the employees from the public part of the office runs at right angles to the cashier's cage east and west, directly opposite doors opening on the north side of California Street. A gate through this counter is the exit for those behind it and back of the cashier's cage as well. Aside from going from the cashier's cage around to a place behind this counter, whence

he could see straight out through the open doors into California Street, the clerk did nothing to apprehend the customer. He then spoke to the office manager and handed him the check which had been left, and which was for an amount some seven hundred dollars in excess of the bill for Liberty bonds, or some seventy dollars in excess of the combined bill for the Liberty bonds and the amount for which the Standard Oil stock was expected to be secured. The manager in turn handed the check to the cashier, who deposited it in the bank. No member of the firm was in the office at the time. On the following morning, at 9 o'clock or earlier, a member of the firm ordered the check withdrawn from the bank, and it was returned to plaintiffs unpaid. [1] During the morning, subsequent to the withdrawal of the check, telephone communication was had by plaintiffs' office with that of Kennard & Bierce in Los Angeles, and it was ascertained that Mr. Kennard had not been in San Francisco the previous day. Prior to the trial Mr. Kennard testified that someone telephoned him from San Francisco about this date, between 10 and 11 o'clock in the morning; that he did not know who it was, but was under the impression that it was from the office of the Standard Oil Company. He also testified that the questions asked were as to his age, appearance, and his presence in San Francisco the day previous. On this state of affairs, evidently on the theory that the communication testified to by Kennard was not sufficiently connected up, defendant asks us to hold as error the action of the trial court in allowing the clerk's testimony on this point. We think the telephone communication was sufficiently identified by the clerk to establish it as that testified to by Mr. Kennard himself, and having been thus established we see no error in admitting the former's testimony. That it was later in time than the action taken by plaintiffs in withdrawing the check from the bank supports their contention, we think, that no reliance was placed on the check.

[2] Appellant also urges as error the admission in evidence of testimony of the clerk that no conversation with anyone in the office of plaintiffs was had by him as to the validity of the check. Though this testimony on direct examination would have been objectionable as tending to establish an implied negative statement, we think that the trial

court was entitled to receive it on the redirect examination of plaintiffs to rebut the inference following on the one circumstance of the deposit of the check in the ordinary course of business brought out by defendant on cross-examination, that plaintiffs were acting on what they considered a valid check.

The third error assigned by appellant is the admission in evidence of testimony that the withdrawal of the check was made prior to the telephone communication between the office of J. Barth & Co. and Kennard & Bierce in Los Angeles. The same may be said with respect to this evidence as to that respecting testimony of conversations regarding the validity of the check.

[3] The entire contention of appellant, without citation of any cases in point, is that the bonds were obtained through forgery, and that it, therefore, is not liable to plaintiffs under its indemnity bond. We agree with the lower court that the bonds were stolen by a person calling himself E. Kennard, regardless of what his name may have been, and that the fact that he left behind him a check some seven hundred dollars in excess of the value of the bonds he carried away only strengthens our belief, in addition to the evidence in the record, that forgery played no part—as to plaintiffs— in his securing and making away with them. Appellant calls attention to the fact that the addition of the value of the two shares of Standard Oil stock which he assumed to order, to the bill for the bonds would reduce the excess to some seventy dollars, but we cannot see that this fact adds any force to their argument. Men do not so generously dispense with what is theirs, nor pay in advance as a usual thing for what is not yet forthcoming.

The fact that the check was deposited in the bank does not appeal to us with the same force that it seems to have for appellant. There was no member of the firm present when the action was taken—there is no evidence to show why it was done. The occurrence took place late in the day, after regular banking hours. At or before 9 o'clock the following morning, before banking hours, and at the first opportunity offered a member of the firm acted in repudiation of the check by ordering its withdrawal.

63 Cal. App.—13

Appellant has cited us to no cases that are in point, and we believe that the lower court was correct in its rulings and holding.

The judgment is affirmed.

Richards, J., and Tyler, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 24, 1923.