[Crim. No. 2211. Second Appellate District, Division Two.—January 23, 1933.]

THE PEOPLE, Respondent, v. LOUIS FRANK, Appellant.

William I. O'Shaughnessy for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, and William R. McKay for Respondent.

ARCHBALD, J., *pro tem.*—The information filed accused the defendant of a violation of section 2, chapter 339, approved June 13, 1923, as amended in 1931 (par. 2, Act 1970), in having in his possession a pistol capable of being concealed upon the person, defendant having been theretofore twice convicted of a felony in the state of Illinois, in 1908 and 1913, respectively. Defendant pleaded not guilty, but admitted the two convictions charged. The jury returned a verdict of guilty, and from an order denying his motion for a new trial and the judgment entered upon said verdict defendant has appealed.

No question is raised as to the sufficiency of the evidence to support the verdict.

On cross-examination of a witness named Walden he was asked by the district attorney if he ever went under the name of Wallace. Over appellant's objection that nothing was asked on direct examination which permitted such inquiry, the witness testified that he had gone under the name of Charles B. Wallace. He was then asked, with-

out further objection, if he had gone under the following names: Charles Washburn, Charles Warden, Charles H. Monroe, Clarence Greenslit and Charles B. Warren, to each of which questions he answered affirmatively. In addition, he testified that he could not recall if he had ever used the name of Clarence Brockman. The objection to the first question of this series having been overruled by the court, we are of the opinion that it was not necessary for counsel to repeat it to each similar inquiry in order to preserve appellant's right to review any claimed error on appeal. (*Green* v. *Southern Pac. Co.*, 122 Cal. 563, 565 [55 Pac. 577]; *People* v. *Driggs*, 12 Cal. App. 240, 243 [108 Pac. 62, 64].) It is now urged that it was error to permit such inquiry.

The examination was permitted by the court on the theory that the testimony was relevant and affected the credibility of the witness. No attempt was made by the district attorney to make the witness his own, the answers being given on cross-examination. The order of examination is discretionary with the court, and if the evidence was material no harm would be done by permitting the answers to be given during cross-examination, as the same questions would undoubtedly have been permitted on examination-in-chief. That the answers given tended to affect the credibility of the witness there can be no doubt. The jury might well conclude that a witness who admitted using so many different names, without giving satisfactory explanation therefor, was neither a truthful nor an honest character. Under section 2065 of the Code of Civil Procedure, the witness was not required to answer, but he seemed perfectly willing so to do, as he partially answered the first question interposed along that line before an objection could be made. Such privilege, however, "is personal to the witness, and is not in any sense the privilege of the party calling him". (*Clark* v. *Reese*, 35 Cal. 89, 95.) The objection interposed here did not involve the question of privilege, but was solely on the ground of improper cross-examination. Section 2051 does not by its terms prohibit impeachment by evidence that merely tends to discredit the character of a witness in the minds of jurors, but is not evidence of particular wrongful acts not amounting to conviction of a felony. Whether on cross-examination such may be done by the in-

troduction of matter not connected with the direct examination is a serious question upon which the courts are not in accord.

In the case of *People* v. *Crandall*, 125 Cal. 129 [57 Pac. 785, 788], the questions so asked reflected on the character of the witness and showed particular wrongful acts within the prohibition of section 2051 of the Code of Civil Procedure. After the witness had answered in the negative plaintiff proceeded to prove by other witnesses that the answers were not truthful. The majority opinion held very properly that under section 2051 such cross-examination was prohibited. Justice Temple, in a concurring opinion, says that he does "not agree that questions irrelevant to the issues in the case, asked for the purpose of discrediting the witness, can never, in the discretion of the trial judge, be asked of a witness"; that "as a general rule the cross-examination should be confined to the subject-matter of the direct examination, but this rule necessarily cannot apply to matter of impeachment"; and he seems to say that questions may be asked on cross-examination to discredit a witness and the answer compelled, however irrelevant to the fact in issue, except where the answer might expose the witness to a criminal charge or tends to prove particular wrongful acts. The cases presented by appellant as authority on the point involved, while they contain language supporting the proposition that such questioning is erroneous, seem to involve particular wrongful acts, which bring them squarely within section 2051 of the Code of Civil Procedure. In view, however, of the fact that, although it was perhaps *dictum,* the majority of the court in *People* v. *Crandall, supra,* seemed to be opposed to the reasoning of the concurring opinion, and in view of the strong statements of the Supreme Court and the limitations on cross-examination that section 2048 of the Code of Civil Procedure seems to impose, we are of the opinion that such questions should not have been permitted. (See, also, *People* v. *Sherman,* 100 Cal. App. 587, 592 [280 Pac. 708].)

The evidence in this case was direct and not circumstantial. There were two other witnesses besides appellant and Walden whose testimony was to the effect that appellant had no gun in his hand on the occasion in question. One

124

was the third occupant of appellant's car; the other was the witness MacLean, whose automobile collided with that of appellant, after which the latter got out of his car and struck MacLean. This witness testified that he was standing right behind "old Mr. Hapgood's shoulder"—this Mr. Hapgood being the principal witness for the prosecution— about a foot and a half or perhaps two feet from the car, and saw the gun in Walden's hand but did not see any in appellant's hand. This undoubtedly would have been persuasive evidence to the jury on the disputed point but for the admitted fact that appellant had twice been convicted of a felony, coupled with the unusual actions of appellant and Walden on the night in question, as shown by the evidence, which must certainly have had a strong effect on the credibility of the testimony of the three occupants of appellant's car. After an examination of the entire cause, including the evidence, we cannot believe the result would have been different if the objectionable questions had not been asked and the answers given.

■ The witness MacLean was asked on cross-examination if he swore to the complaint against the defendant, to which he answered in the affirmative. He was then asked, "For what?" to which an objection that the same was incompetent, irrevelant and immaterial was sustained. It was defendant's theory that inasmuch as the complaint was for disturbing the peace there was no thought of preferring any other charge. Such conclusion does not necessarily follow, because there would not seem to be much doubt from the evidence that at the time in question Frank was fighting MacLean. We see no error in the ruling. In any event the nature of the charge was later testified to by appellant himself.

■ Appellant also urges that the court erred in permitting the district attorney to question him on cross-examination as to the use of the names Armstrong and Ahrnsdorff, which appellant admitted he had done, "but not in California". The record is silent as to any objection to such cross-examination and we fail to see how any harm resulted, in view of defendant's admission that he had been twice convicted of felony—a much more serious impeachment.

■ Complaint is also made that the district attorney was guilty of misconduct in commenting to the jury on the failure of defendant to produce certain witnesses before them, but the record discloses that the court, when its attention was called to the circumstance, properly instructed the jurors concerning same.

■ The district attorney recalled the witness Walden for further cross-examination and directed his attention to an automatic revolver, which was produced, asking him if he was not in possession of that particular gun on the evening in question. To this question the witness answered "No, sir", but he did admit that he was the owner of such weapon. The objection of immateriality to the question which brought such admission follows the answer made. It is impossible to judge from a transcript the close sequence such occurrences sometimes have, but it is evident that the court treated the objection as having been timely made and therefore ruled upon it, and we think it must be given the same effect on appeal as though a motion had been granted to strike the answer for the purpose of interposing the objection. ■ Certainly it was immaterial whether Walden owned the gun exhibited unless it was the gun used by him at the time in question. It appears from affidavits presented on the motion for new trial that the automatic so presented was taken from the possession of Walden prior to the affair in question here, and that it probably had been in the possession of the district attorney's office continuously since. No evidence was introduced at the trial to show where the gun came from. Counsel for defendant apparently did not know anything about the automatic and asked no questions of the witness in regard to it. The witness immediately after testifying left the court, and counsel did not ascertain the facts concerning the weapon until after the conclusion of the trial, when they were urged as newly discovered evidence.

We cannot condone the use of such tactics by the deputy district attorney who tried the case. Such procedure was unfair and clear misconduct in the light of all the facts; and if the facts so presented might have changed the result of the trial a new trial should have been granted. Two witnesses had testified on direct examination that the gun which the witness Walden had was an automatic and not

the six-shooter which was introduced as exhibit I, and which Walden, the defendant and the witness Osborne who was in the car with them testified was the only gun in the machine that night. Several other witnesses testified that Walden and the defendant each had a gun, and identified exhibit I as the weapon defendant had. Evidently the prosecuting attorney made no comment to the jury on the gun produced. Why it was produced we cannot conceive, unless the prosecutor hoped to bring out some voluntary explanation by the witness which would have shown that the latter was at the time being prosecuted for a criminal offense and thus impeach him by a showing of other wrongful acts, which he could not do directly under section 2051 of the Code of Civil Procedure. The jury must have thought such action peculiar, but we fail to see how it would have had any other effect under the evidence. Had defendant made a motion to strike the evidence the court would most certainly have granted it. However, we cannot see how the verdict would have been changed if the history of the gun had been brought to the attention of the jury, nor do we see how appellant was prejudiced by the misconduct referred to.

The only other newly discovered evidence shown by the affidavits upon which the motion for a new trial was based related largely to conversations with the witness Elwood Hapgood in which it is claimed that Hapgood stated that they (referring to himself and his father) "could not honestly say that they had seen any gun in the hands of Louis Frank; that they had seen something either in his lap or on the seat which was dark and cast a reflection as of metal of some kind—they could not say whether it was a gun or·a flashlight or what it was", and also statements to the same effect so far as the witnesses Bestwick and Sawyer were concerned. The other matters shown by the affidavits seem to relate to matters known to the defendant Frank, and consequently, if true, should have been brought out on the trial. The statements were pure hearsay, so far as any witnesses except Elwood Hapgood are concerned, and are positively denied by the affidavits of Elwood Hapgood and the others. The lower court having determined the motion for a new trial on the ground of newly discovered evidence on conflicting affidavits, we are not authorized to

interfere with its decision. (*Kataoka* v. *Hanselman*, 150 Cal. 673 [89 Pac. 1082].)

Judgment and order affirmed.

Works, P. J., and Stephens, J., concurred.