262 P.2d 613]

[Civ. No. 15555.   First Dist., Div. One.   Nov. 3, 1953.]

CLIFFORD ANTHONY PETERSON, a Minor, etc., Appellant, v. CLIFFORD A. PETERSON, Respondent.

Myrick & Deering and Scott for Appellant.

Bagshaw, Schall & Martinelli and A. E. Bagshaw for Respondent.

PETERS, P. J.—This action was instituted by a child through his mother, Anne Kinney, against defendant to have it determined that defendant is the father of plaintiff, and to secure support, counsel fees and costs.  At the trial the only

witnesses produced were defendant and plaintiff's mother. The jury brought in a verdict for defendant. From the judgment entered on that verdict plaintiff appeals.

The child was born July 26, 1948. The complaint was not filed until July 10, 1951. The cause was tried in March, 1952. The evidence was directly conflicting. Anne testified to meeting respondent on an army transport upon her return to this country from Germany; that upon his promise to get a divorce and to marry her she spent two nights, October 17 and 18, 1947, in two designated hotels in New York City with respondent; that she had sexual intercourse with him on those occasions; that she was then 32 years of age; that prior and subsequent to those two nights she had never had intercourse with any other man; that just before embarking on the transport she had her regular menstrual period.

Respondent, who had been married for 10 years at the time of trial, denied these accusations. He admitted meeting Anne on the transport; denied any romantic overtures while on shipboard; admitted that he took Anne to dinner twice in New York but differed from Anne as to the dates, he claiming the two dates were October 16 and 17, 1947. He admitted that, on October 17th, after both had had considerable to drink, he propositioned Anne to spend the night with him at a hotel, and she agreed, but claimed that they were unable to find a hotel that was not full, and so he returned her to her hotel, where men were not admitted, without having accomplished his purpose, and returned to the ship where he was employed. He denied that then, or at any other time, he had had intercourse with Anne.

Anne testified that defendant had registered the first night at Hotel Walcott, and the second night she, at defendant's suggestion, had registered as "Mr. and Mrs. A. Kinney" at the Breslin Hotel. Letters from both hotels were admitted in evidence. The Breslin's records failed to show that a Kinney or a Peterson had registered there on any of the critical nights. The Walcott's records showed a "Mr. and Mrs. A. Peterson and party" had registered on October 15, 1947, and had checked out on October 17, 1947. No other record was found of a Kinney or Peterson registration for the nights in question.

It is not necessary to recount the evidence on these matters in further detail. It is obvious that on the critical issue of whether respondent had intercourse with Anne in October of 1947 there was a direct conflict. ■ The burden rested

on appellant to prove his case by a preponderance of the evidence. It was the jury's function to pass on the credibility of the two witnesses. It obviously was not convinced by Anne's story. Moreover, no contention is made that the evidence does not support the verdict and judgment.

The major contention of appellant is that error of a most prejudicial nature was committed on the cross-examination of Anne, in that respondent was then permitted to bring out her general relationships with other men over a period of about six years, and long prior to the period of possible conception. This, it is contended, was prejudicial error even though appellant's counsel at the trial (new counsel have been secured to handle this appeal) made no objection of any kind to the testimony in question.

On this issue the record shows the following: On direct examination by counsel for plaintiff Anne testified that she had been in the Women's Army Corps for three years, and had worked overseas as a civilian for about two years; that she was in Europe, either in the military service or as a civilian, from 1945 to September or October, 1947; that she met respondent on shipboard, and that it was upon their arrival in New York that the events above mentioned occurred. She also, on direct, testified that she never had had intercourse with any other man before or subsequent to October of 1947.

On the cross-examination of Anne respondent elaborated on these matters first brought out on direct. Not one objection was made to this cross-examination. Thus, Anne testified that she was 32 in October of 1947; that she had been born in a small town in Alabama; that after the death of her father she lived for about a year in Birmingham, Alabama, with her sister; that both joined the service in 1941, her sister as a nurse, and she as a WAC; that she spent three years in the WACs, mostly in this country, but a short time in France and Germany. Respondent's counsel had her describe the various military establishments where she had been stationed. She testified that she had spent two and one-half years at Mitchell Field, New York, as an aircraft dispatcher; that in these various camps she frequently saw and came in contact with many men, and was under the command of male personnel. It was brought out that Mitchell Field was close to New York City, but she denied making frequent visits to the metropolitan area. She then testified that she was sent overseas and spent several months in France and

Germany; that in August of 1945 her enlistment expired, and she elected to stay in Germany on a civilian job; that she lived at Hertz, Germany, near Frankfurt; that she was so employed until September of 1947, when she returned to the United States; that during her stay at Hertz she first lived in an apartment and later in a commandeered house. She admitted that during this period she was in constant contact with male civilian and military personnel. It was brought out that Anne frequently ate and danced with military and civilian personnel, but she denied any steady romances with any particular individual.

In his argument to the jury counsel for respondent, without objection, was permitted to refer to the above evidence and to argue that it indicated Anne's lack of moral home ties during the five plus years she was in government service, and that this background rendered it highly unlikely that she would suddenly surrender her virtue at age 32, but rather indicated that she had lived a life where many men had the opportunity of being the father of the child.

It is urged that this line of questioning and argument was undertaken for the sole purpose of besmirching Anne's reputation and prejudicing her before the jury, and constituted serious and prejudicial error. ■ It is undoubtedly the law that, in such actions, evidence of immorality of the mother prior to the period of possible conception, or questions designed to bring out or imply acts of immorality for the purpose of showing bad character, or for impeachment, are inadmissible, and that it is error to even ask such questions. (*People* v. *Crandall*, 125 Cal. 129 [57 P. 785] ; *Estate of Kasson*, 127 Cal. 496 [59 P. .950] ; *Estate of Gird*, 157 Cal. 534 [108 P. 499, 137 Am.St.Rep. 131] ; *Mensing* v. *Croter*, 209 Cal. 318 [280 P. 1026, 287 P. 336] ; *Dastagir* v. *Dastagir*, 109 Cal.App.2d 809 [241 P.2d 656] ; see annot. 104 A.L.R. 84.) ■ But there are authorities which hold that the trial court may permit questions about general background which, while incidentally or inferentially degrading, may serve to test the credibility and memory of a witness. (*People* v. *Le Baron*, 92 Cal.App. 550 [268 P. 651, 269 P. 476] ; *People* v. *Clarke*, 130 Cal. 642 [63 P. 138] ; *People* v. *Frank*, 129 Cal.App. 119 [18 P.2d 719] ; *People* v. *Loomis*, 86 Cal. App. 768 [261 P. 512] ; *People* v. *Peccole*, 92 Cal.App. 470 [268 P. 473] ; *People* v. *Payton*, 36 Cal.App.2d 41 [96 P.2d 991].)

The principal case relied upon by appellant is *Dastagir* v. *Dastagir*, 109 Cal.App.2d 809 [241 P.2d 656]. That case

not only held that the asking of such questions was error, but also held that such error was prejudicial even though, as here, there had been no objection to such questions. Undoubtedly the Dastagir case contains much language in support of appellant. That case was also a paternity suit. There, as here, the respondent testified that he had not had intercourse with the appellant's mother. The jury, as here, brought in a verdict for the defendant. The judgment, based on that verdict, was reversed, for several reasons. One ground of the reversal was the asking of appellant's mother a series of questions broadly implying misconduct on her part at a time before the possible conception of the child. These questions were directed at specific instances of misconduct, that is, they asked the witness if at a certain time and place she had engaged in described acts with designated individuals. The answer was consistently ''No.'' No attempt was otherwise made to prove this implied misconduct. The appellate court held such questions highly improper, not only as implying information not actually possessed by counsel, but as improper for impeachment purposes, even if such information was possessed. The court stated the rule as follows (p. 815) : ''The only question at issue was whether the defendant was or was not the father of the child born September 12, 1948. Any evidence offered to show directly or by inference that the plaintiff had sexual relations with some man other than the defendant prior to the date the child must have been conceived in due course of nature was therefore irrelevant and immaterial to prove or disprove the issue. Such evidence submitted to a jury might well inculcate a belief that the defendant was telling the truth, and not the plaintiff, and that therefore the defendant was not the father of the child. The plaintiff was entitled to have the credibility of her testimony judged by proper and not improper testimony or inferences resulting therefrom.''

The court went on to hold that a failure to object to the suggestive and improper questions was not fatal to the contention that prejudice resulted, because it would create as much prejudice in the eyes of the jury to object to such questions as to allow them to pass. After citing sections 2044 and 2066 of the Code of Civil Procedure, it was held that the trial court should have objected to such questions of its own motion, and failure to do so deprived the plaintiff of a fair trial.

It should also be mentioned that several other errors not here relevant were involved in the Dastagir case, errors which entered into the reversal.

■ It is our opinion that the holding in the Dastagir case is not here controlling. This is so for several reasons. Here the questions addressed to appellant's mother were not directed to specific acts of claimed misconduct. They were aimed at developing the fact that for the five years prior to conception the witness had been in society where men outnumbered women by a substantial majority. The implication, of course, was obvious. But this subject matter was not brought into the case first by respondent. On direct examination appellant's counsel brought out that the witness had been in the WACs for three years, and then been a civilian employee of the government in Europe for over two years thereafter. The questions asked by respondent were not directed to specific claimed acts of misconduct, but merely elaborated on the subject first brought into the case on direct. Appellant cannot elect to take advantage of the implications flowing from the fact that his mother had enlisted in the WACs at the inception of the war, and was therefore a patriotic American, without subjecting the witness to cross-examination as to this general subject matter.

Moreover, these general questions about the background of the witness were not mere shots in the dark unconnected up with admissible evidence. ■ The respondent testified as to admissions made by Anne to him that she had had a love affair with an American in Germany, that she had been "intimate" with this man, and that she had seen him shortly before her embarkation to the United States. These admissions were made in New York, and later in San Francisco after the baby was conceived, the plaintiff's mother then stating, according to respondent, that she believed the child had been conceived in Germany. While statements of the mother as to her belief as to who was the father of the child may be hearsay so far as the child is concerned (*Estate of Gird*, 157 Cal. 534 [108 P. 499, 137 Am.St.Rep. 131]), such statements may be admissible as impeachment, and are clearly admissible in the absence of objection.

■ Appellant next contends that the contents of several affidavits filed on the motion for a new trial compelled the granting of the motion. The motion for a new trial was filed March 14, 1952, specifying most of the grounds permitted by law, and recited that affidavits were to be filed to support

several of the grounds urged. On March 20, 1952, a stipulation was filed which was approved by the court, and incorporated in an order, extending the time to file the affidavits to April 4, 1952. No affidavits were filed until April 14th. Thus, not only were the provisions of the order and stipulation violated, but also violated were the provisions of section 659a of the Code of Civil Procedure. That section requires the filing of affidavits within 10 days of service of the notice of motion (the notice of motion was deposited in the mail properly addressed on March 13th), and empowers the court to extend the time for not more than 20 days. Thus, no matter how the time is computed, the affidavits were filed too late. Thus, the trial court was justified in disregarding all of the affidavits. (*Fernandez* v. *Consolidated Fisheries, Inc.*, 117 Cal.App.2d 254, 263 [255 P.2d 863] ; *Sitkei* v. *Frimel*, 85 Cal.App.2d 335, 338 [192 P.2d 820].)

Moreover, even if considered, none of the affidavits required the granting of the motion. One of the major affidavits relied upon is that of one of the jurors. It was properly disregarded by the trial court because that juror averred that it was her belief and that of the other jurors, evidenced by the jury room discussion, that respondent had had intercourse with Anne, but the affiant and the others were not satisfied that respondent was the father. Such an affidavit cannot be used to impeach, explain, or interpret the verdict, except to show that it was arrived at by chance. (*Fernandez* v. *Consolidated Fisheries, Inc.*, 117 Cal.App.2d 254, 263 [255 P.2d 863] ; *Phipps* v. *Patterson*, 27 Cal.App.2d 545, 546 [81 P.2d 437] ; *Mish* v. *Brockus*, 97 Cal.App.2d 770, 776 [218 P.2d 849].) Moreover, neither this affidavit nor any of the others filed is inconsistent with the verdict.

It is also urged that a new trial should have been granted based on certain affidavits, also filed late, which, it is claimed, show that respondent committed perjury in reference to a matter that must have affected the judgment. This contention is based on the following facts : When respondent was being cross-examined under section 2055 of the Code of Civil Procedure he was asked if he had ever offered to adopt the child or whether he had ever sent anyone to talk to appellant's mother about an adoption. Respondent replied that he had not. On the direct examination of his own counsel respondent also denied that Anne had ever asked him to adopt the child, that he had ever written to her refusing to adopt the child, and that he could not recall any suggestion that

he adopt the child. He admitted that in July, 1951, after receiving a letter from Anne demanding support money, he had sent his friend Michaelson to talk with Anne about her claims, but denied that he had authorized his friend to talk about adoption. During the trial appellant offered no other evidence on this subject, and made no effort to challenge or to impeach this testimony. In her affidavit on the motion for a new trial Anne alleged that prior to August of 1951, which was more than six months prior to trial, respondent and his attorney in the Marin County courthouse offered to adopt the child. This affiant also alleged that in July, 1951, one Michaelson, claiming to represent respondent, met with her to discuss adoption and offered her, on behalf of respondent, a "limited financial adjustment," which she refused, and that she then told Michaelson that there would be no adoption by respondent.

A Mrs. McCarthy, by affidavit, averred that as the intermediary of Anne she met with Michaelson about July 3, 1951, and that Michaelson, on behalf of respondent, stated that respondent offered to adopt the child and to pay to Anne $1,000 in cash.

Respondent's counsel filed a counteraffidavit in which he averred that respondent was then out of the country as a naval officer; that he, the attorney, after seeing the child and prior to trial, had suggested to respondent that, regardless of the subject of paternity, since respondent and his wife were childless, they should consider the possibility of adopting the child; that respondent stated that he and his wife might be interested; that then in the corridor of the courthouse in Marin County he, the attorney, approached Anne, and suggested that respondent and his wife might adopt the child; that Anne refused the offer; that to the knowledge of affiant this was the only offer of adoption made by respondent; that affiant did not know of Michaelson or of his authority to act for respondent.

It is claimed that these affidavits demonstrate that respondent must have committed perjury on the trial when he denied any offers to adopt, and that under such circumstances it was an abuse of discretion to deny the motion for a new trial. It will be first noted that these affidavits disclose that the evidence there set forth was known to Anne many months before the trial, and no reason is alleged as to why such evidence was not produced at the trial. Moreover, such conduct would not necessarily amount to an admission. The

proffered testimony would have been admissible, however, to impeach defendant. ██ But the law is well settled that newly discovered impeaching testimony does not compel the granting of a new trial. (See *Wilson* v. *Kopp,* 114 Cal.App.2d 198, 206 [250 P.2d 166].)

Appellant next contends that the redirect examination of Anne was unduly limited in that, although defendant had been permitted to ask her on cross-examination if the action had been brought in the belief that respondent was wealthy, she had been prohibited on redirect from testifying as to the real reason the action had been brought. ██ It is undoubtedly the law that evidence that could not have been admitted on direct examination may be admissible on redirect to rebut evidence produced on cross-examination. (*Kahn* v. *Maryland Casualty Co.,* 63 Cal.App. 189 [218 P. 452] ; *People* v. *Corey,* 8 Cal.App. 720 [97 P. 907].) ██ It is probably true that the redirect of Anne was unduly restricted on this collateral matter. But this error could not possibly have been prejudicial. Anne emphatically denied that hope of financial gain by her had motivated the bringing of the action, and it must have been obvious to all that the action was brought to secure support for the child.

The last contention that need be mentioned is that the trial court improperly excluded evidence claimed to be admissible under the pedigree exception to the hearsay rule. This contention is predicated upon the fact that on the direct examination of Anne she was prevented from testifying that at birth she had the appellant christened "Clifford Anthony Peterson." Later on cross-examination she testified that she had not told respondent that she intended to name the child after him until some time after the child had been so christened.

██ It is of course true that declarations of pedigree by those in the family group are generally admissible to prove facts of family history. But there are limitations on this exception to the hearsay rule. If a controversy or a motive to deceive exists when such declarations are made they are then inadmissible. They are then self-serving hearsay. (Wigmore, Evidence, vol. V, pp. 298-302, §§ 1483 and 1484; see, generally, *Estate of Walden,* 166 Cal. 446 [137 P. 35] ; *In re Jessup,* 81 Cal. 408 [21 P. 976, 22 P. 742, 1028, 6 L.R.A. 594].)

██ We do not find it necessary to pass on the question as to whether this evidence was admissible or inadmissible.

Even if admissible it would only have tended to show that when the child was born his mother claimed or believed that respondent was the father. That fact was already before the jury, particularly by the testimony of Anne that she never had intercourse during her life with anyone but respondent. It is also obvious that the jury knew that the child was named Clifford Anthony Peterson because the complaint so names the appellant, and also names Clifford A. Peterson as defendant. Thus, even if such evidence should have been admitted, its exclusion could not have been prejudicial.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.