[Civ. No. 31639.  Second Dist., Div. One.  Feb. 13, 1968.]

BETSY BOSTARD, Plaintiff and Appellant, v. DOUGLAS BOSTARD, Defendant and Respondent.

794

Eric A. Rose for Plaintiff and Appellant.

Marcum & Salmon and Harold K. Marcum for Defendant and Respondent.

LILLIE, J.—Plaintiff appeals from interlocutory decree of divorce and seeks review of order denying her motion for a new trial. (*Diemer* v. *Eric F. Anderson, Inc.*, 242 Cal.App.2d 503, 508 [51 Cal.Rptr. 657].)

The parties were married August 5, 1958, and separated May 18, 1964; they have two minor children. Plaintiff has a 16-year-old son by a former marriage and receives from his father $75 per month child support. She is 37 years old, physically able to work, in the past has been employed, is experienced as a file clerk and in general office work and presently has on file written applications for employment in numerous firms. Plaintiff told defendant she was going to work after the divorce proceeding, but told defendant's mother that she was not going to do so because she thought defendant should support her. Defendant is a Long Beach police officer; he earns $728 base pay per month plus $13 overtime; his net take home pay is $449.54 per month, after credit union and tax deductions and withholdings.

The community property of the parties consists of two automobiles, household furniture and furnishings, and two sailboats, one unfinished. There are community debts and obligations secured by the community property that exceed its value. Defendant has an equity in the police officer's retirement fund that he may not withdraw until he retires or terminates his employment; he has been a police officer for five years.

The interlocutory decree granted a divorce to each party; awarded the community property as follows: the Chevrolet Corvair (1960) and the furniture and furnishings to the plaintiff, and the MG (1959) automobile, the two sailboats and the equity in the retirement fund to defendant; and ordered defendant to pay outstanding obligations against all of the community property, including that awarded to plaintiff, $75 per child, or a total of $150 per month child support, and $50 per month alimony for a period of nine months, then $1 per month, and to keep in effect a health and accident policy for the benefit of the children. Thereafter plaintiff moved for a new trial upon grounds of newly discovered evidence and the insufficiency of the evidence, filing a declaration in support thereof setting up what she claimed to be "newly discovered evidence." No counterdeclaration was filed. The motion was denied.

Appellant concedes that the evidence on its face supports the judgment but contends that her uncontroverted declara-

tion in support of motion for new trial established as a matter of law that "the basis of the judgment is fictitious." Basically she argues an abuse of the trial court's discretion in denying her motion because the "newly discovered evidence" demonstrates that defendant owes fewer obligations than he claimed at the trial which materially affects the support payments and division of community property.

In her declaration in support of motion for new trial, plaintiff alleged that since the trial, March 24, 1965, she "has discovered information not in her possession at the time of trial, and which could not have been discovered by her with reasonable diligence before trial, concerning statements made by defendant under oath at the time of trial, affecting the assets of the parties and defendant's monthly expenses as follows:"

1. Letter dated April 5, 1966, from Long Beach City Employees Federal Credit Union showing that defendant owes $778.08. (Defendant testified at the trial that he owed the Credit Union $2,300 of which the court ordered him to pay $2,000.)

2. "[P]laintiff is informed and believes . . . that no loan account existed at" Belmont Savings and Loan Association at the time of trial. (Defendant testified that he was paying off a $700 loan at $40 per month to Belmont Savings; the loan was made to his mother in her name since he could not borrow the money himself; he makes monthly payments to her.)

3. "Plaintiff has since the date of trial been informed" that defendant was living with another woman paying $85 per month rent. (Defendant testified that he lived with his mother to whom he paid no rent but would be unable to live there much longer and expected to move and to pay around $90 per month rent.)

4. Letter from Allstate Insurance Company (April 13, 1966) that defendant's automobile insurance terminated June 21, 1965, for nonpayment of premiums; letter from Travelers Insurance Company (April 8, 1966) that defendant applied for insurance but the premium never was paid. Defendant testified he pays $13.50 per month for insurance on both automobiles.)

5. "Citizens National Bank has advised plaintiff that no loan at that bank at the time of trial" was in existence. (Defendant testified that he paid $55 per month to Citizens National Bank on a loan of $400 which financed a 20-foot boat later sold to a Mr. Ehmann; he was ordered to pay the bank the amount of the loan.)

██ ██ Under section 657, subdivision 4, Code of Civil Procedure, one ground for a motion for new trial is "Newly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial." It is readily apparent that on its face, plaintiff's declaration is fatally defective in that it fails to recite any facts showing diligence in obtaining the information or the materiality thereof.

██ "A new trial on the ground of newly discovered evidence will be granted only where the affidavit in support thereof recites facts showing that the evidence could not, with reasonable diligence, have been discovered and produced at the trial. (Code Civ. Proc., § 657, subd. 4; *Slemons* v. *Paterson*, 14 Cal.2d 612, 616 [6] [96 P.2d 125]; *Estate of Magerl*, 201 Cal. 162, 169 [7] [256 P. 204]; *Estate of Cover*, 188 Cal. 133, 149 [14] [204 P. 583]; 3 Witkin, California Procedure (1954), § 14, pp. 2058l, et seq.)" (*Fomco, Inc.* v. *Joe Maggio, Inc.*, 55 Cal.2d 162, 165-166 [10 Cal.Rptr. 462, 358 P.2d 918].) "The fact that the testimony has just been discovered when it is too late to introduce it, has been characterized as a circumstance so suspicious that the very strictest showing of diligence is required by the courts (*People* v. *Freeman*, 92 Cal. 359, 366 [28 P. 261])." (*Shivers* v. *Palmer*, 59 Cal.App.2d 572, 576 [139 P.2d 952].) The burden is on the moving party to show reasonable diligence. (*Fletcher* v. *Pierceall*, 146 Cal.App.2d 859, 866 [304 P.2d 770]; *Pierce* v. *Nash*, 126 Cal.App.2d 606, 620 [272 P.2d 938]; *Slemons* v. *Paterson*, 14 Cal.2d 612, 616 [96 P.2d 125]; *Boynton* v. *McKales*, 139 Cal.App.2d 777, 783 [294 P.2d 733].)

██ Plaintiff made the bare allegation that she has discovered information not in her possession at the time of trial which she could not have discovered before, but recited no facts showing that with reasonable diligence she could not have discovered and produced her evidence at the trial. In fact, no such showing could have been made since her "information," some of which is alleged only on information and belief, was open to discovery over six months prior to trial upon examination by her of "Declaration of Husband or Wife Re: Income and Living Expenses" executed and filed by defendant on September 8, 1965, the facts of which were the basis of his testimony at the hearing on plaintiff's order to show cause on that day. On September 8, 1965, defendant's declaration became a matter of public record—a part of the official superior court file in the within case. In this declaration, defend-

ant set up in detail his claimed living expenses and obligations. Listed therein are the names of the very creditors plaintiff has mentioned in her declaration, and the amounts and monthly payments defendant claimed were due:

| "L. B. City Employees Federal Credit Union | Furniture and Autos | Withheld App. $2,000" $120 | |
|---|---|---|---|
| "G. E. Credit Union | Refrigerator $12 | $70 [unpaid balance]" | |
| "Citizens Nat. Bank | Boat | $49 | $400 [unpaid balance]" |
| "Belmont Savings | Pay Bills | $40 | $600 [unpaid balance]" |

It was from defendant's declaration listing his obligations and creditors that both counsel questioned him at the trial; his answers were substantially the same as the information contained therein; and the declaration was received in evidence as Exhibit A. Thus, it is clear that for over six months prior to trial plaintiff well knew the amount of each obligation claimed by defendant, the balance unpaid, the monthly payments thereon, the purpose of the loan and the name of the creditor, to all of which defendant testified at the time of trial. Having been put on notice plaintiff could and should have contacted defendant's listed creditors and made her investigation between September 5, 1965, and March 24, 1966, not after the trial. The letters, "advice" and "information" given to plaintiff by two insurance companies, the credit union and two banks, the names of which she has known since September 1965, easily could have been obtained by her and produced at the trial. Her neglect in failing to "discover" this information prior to March 24, 1966, is inexcusable and shows a complete lack of diligence. A litigant is required to exhaust diligent and reasonable effort to produce at his trial all existing evidence in his behalf.

Further, some of the information contained in plaintiff's declaration amounts to no more than impeaching evidence. ■ Evidence which does not affirmatively prove an issue or is used only to impeach or contradict an opposing witness does not compel the granting of a new trial. *Peterson* v. *Peterson,* 121 Cal.App.2d 1, 11 [262 P.2d 613]; *Wilson* v. *Kopp,* 114 Cal.App.2d 198, 206 [250 P.2d 166].)

■ Finally, plaintiff's "newly discovered" information would not likely bring about a different result; thus, not material, it does not justify granting a new trial. Of course, the

fact that defendant was living with another woman and paying $85 per month instead of living rent free with his mother, may serve to impeach defendant's testimony, but it is of little financial advantage to plaintiff; at most, it shows that the $85 per month he was actually paying for rent was not considered at the trial in a computation of his *then* living expenses. To the information concerning defendant's loans from Belmont Savings and Loan Association and Citizens National Bank alleged by plaintiff on information and belief, we give little credence, but assuming the information contained in the three letters (from the credit union and two insurance companies) attached to her declaration to be true, and that defendant owed the credit union $778.08 instead of $2,000 and was not paying $13.50 per month on premiums for automobile insurance, it would not likely bring about a different result even if a new trial were granted. The undisputed fact remains that defendant receives $728 base pay per month plus $13 per month overtime, or a total of $741 base pay. His net take home pay is $449.54 per month after Credit Union and normal tax deductions and withholdings. This was established by two wage stubs for February 15, 1966, and February 28, 1966 (Exh. B) and his W-2 form for 1965. Out of $449.54 per month, defendant has been ordered to pay $75 a month for each child, or a total of $150 per month child support, and $50 per month alimony for nine months, then $1 per month. At present, without considering any of defendant's *undisputed* obligations, he must pay $200 per month to plaintiff out of $449.54, leaving a balance of $249.54 for his own living expenses, necessary uniform upkeep of $10 per month, etc. Defendant's financial situation would warrant no change in the support order regardless of plaintiff's asserted inability to work and her own needs; nor would it justify any change in the division of community property. The furniture and furnishings valued at approximately $2,000 and a $300 1960 Chevrolet Corvair were awarded to plaintiff; to defendant was awarded a $300 1959 MG, two sailboats one valued between $300 and $400 and the other at $1,300) and an equity in his retirement fund. It cannot be denied that the community property, even that awarded to plaintiff, has been mortgaged and that defendant has been ordered to pay all community obligations.

■ "While the granting or denial of a motion for a new trial upon the ground of newly discovered evidence is generally a matter within the discretion of the trial court, and such an order will be affirmed unless a clear abuse of discretion is

shown, this rule has no application where the affidavit or other evidence upon which the order is made furnishes no basis for the exercise of such discretion." (*Slemons* v. *Paterson*, 14 Cal. 2d 612, 615-616 [96 P.2d 125] ; *Boynton* v. *McKales*, 139 Cal. App.2d 777, 782 [294 P.2d 733].) Such is the situation here. Plaintiff's declaration is so lacking in the essential particulars relative to a showing of "reasonable diligence" and materiality necessary under section 657, subdivision 4, Code of Civil Procedure, that it afforded no basis for the exercise of the trial court's discretion in denying the motion.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 10, 1968.