[Civ. No. 12981.   First Dist., Div. One.   May 31, 1946.]

DAVID POWERS, a Minor, etc., et al., Respondents, v. GREGORY SHELTON et al., Appellants.

Kenneth C. Gillis and Brown, Rosson & Gillis for Appellants.

William A. White and Edward E. Heavey for Respondents.

KNIGHT, J.—This is an appeal from a judgment for $5,000 entered pursuant to the verdict of a jury in an action to recover damages for personal injuries sustained by David Powers when struck by an automobile driven by Gregory Shelton.

The parties involved in the accident were high school students. Powers was 17 years old, and he brought the action through his father as guardian *ad litem* in which his father joined as a party plaintiff. Shelton was also 17 years old, and his parents were made parties defendant by reason of the fact that they had signed his application for a driver's license. Gregory Shelton was not served with summons; consequently he filed no demurrer or answer to the complaint; but he testified at the trial by way of deposition. At that time he was in the United States Naval Reserve and stationed at Farragut, Idaho. His parents filed separate demurrers and answers, and the verdict and the judgment were rendered in favor of David Powers and against Gregory Shel-

ton's parents. The first point made in the appeal is that David Powers was guilty of negligence as a matter of law. There is no merit in the point.

Resolving all conflicts and construing the testimony most strongly in respondents' favor, the essential facts appearing from the evidence are these: The boys attended the University High School on 58th Street, in Oakland, and the accident happened on 58th Street approximately 125 feet east of the Grove Street intersection, between three and half past three o'clock in the afternoon, shortly after the classes had been dismissed. The students were still leaving the school grounds. Many of them drove to and from school in automobiles. Fifty-eighth Street runs east and west, and a Ford coupe owned by a boy named Bouterious was parked facing east on the north side of the street. Bouterious occupied the seat behind the wheel, and two other high school boys were seated to his right. Four high school boys, including David Powers, stood in a line close up to the side of the Ford, on the street side, talking with the boys in the Ford. David Powers was third in line from the front end of the Ford. The boys had been standing there about ten minutes prior to the accident, and much of the time Powers had his head inside the open window of the Ford. Some of the boys, including Powers, were members of the school basket ball team, and they were talking about a game that was to be played at 4 o'clock that afternoon with a team from another high school.

Parked on the same side of the street, about five car lengths east of the Ford, but facing west, was a Chevrolet coach belonging to Gregory Shelton. He got into the coach, accompanied by two school companions, and started the engine. He admitted that before doing so he saw the boys standing alongside of the Ford. After starting the engine he pulled out sharply to the left to the center of the street, so that the left wheels of his coach were over the middle line of the street. He could have continued to drive straight ahead in that position, or even farther over on the south side, because it was clear of traffic; but instead of doing so he swerved back suddenly to the right, three to five feet, thus steering his car directly toward the boys standing alongside of the Ford, to give them a "close-up," as the boys expressed it, which, it seems, was not an uncommon sport among the boys attending that school. The first two boys in line heard and saw the approach of the Shelton car and managed to escape being hit by getting in closer to the side of the Ford.

One of them testified that the Shelton car passed within a foot or a foot and a half from him. The speed of the car as it reached and passed the Ford, was estimated to be anywhere from 18 to 30 miles an hour, which was in excess of the speed limit in that zone. Powers, however, did not see or hear the approach of the car; and the outside handle of the door caught his right forearm, dragging him some distance, then throwing him unconscious to the pavement, and inflicting upon him serious, painful and permanent injuries. They consisted principally of a compound fracture of the bones of the forearm; and while he was lying on the pavement it became necessary for some of his companions to place a tourniquet on his arm to stop the excessive flow of blood. It was afterwards ascertained that one of the main muscles controlling some of the movements of the forearm had been torn completely loose, which resulted in a permanent injury, for the reason that he will never regain the full use of the arm.

The theory on which appellants base their contention that Powers was guilty of negligence as a matter of law is stated by them in their opening brief as follows: ''Plaintiff was guilty of negligence as a matter of law by reason of the fact that he failed to yield the right of way to the Shelton car, and that he moved from a place of safety to a place of danger without even the slightest precaution.'' The first of the two factors upon which appellants base their theory finds no support in the evidence. The uncontradicted testimony shows that Powers was totally unaware of the approach of the Shelton car until the very moment he was struck by it; and certainly it would be most absurd for this court to declare that he was guilty of negligence as a matter of law, upon the theory that he failed to yield the right of way to the approaching vehicle, when the uncontradicted evidence establishes that, up to the precise time he was struck by the car he was entirely unaware of its presence or approach.

With reference to the second factor relied upon by appellants, that Powers was moving from a place of safety to a place of danger when he was struck and injured, appellants claim that just before he was hit, Powers moved backward into the street. The only witness so to testify, however, was one of the boys riding with Shelton, and the very most that can be said for his testimony is that it raised a slight conflict on that point. All of the rest of the testimony shows overwhelmingly that instantly before the impact Powers, who

had been facing north, turned slightly to the right, but that he did not step backward, or attempt so to do, and such was the implied finding of the jury.

A mere glance at the essential facts of the two cases cited by appellants in support of their theory shows that those cases are clearly inapplicable to the factual situation here presented. In *Moss* v. *H. R. Boynton Co.*, 44 Cal.App. 474 [186 P. 631], a pedestrian stepped from a place of safety at the curb between intersections and started across the street, thus placing himself in a position of danger, without taking the precaution to keep a lookout for approaching traffic, and he was hit and injured by an oncoming car. In the other case (*Chase* v. *Thomas*, 7 Cal.App.2d 440 [46 P.2d 200]) the plaintiff after double parking his laundry truck, went to the rear of the truck, took out a bag of laundry, closed the door and then stepped out farther into the street into the pathway of an approaching automobile, assuming that the driver thereof would slow up to give him the right of way.

In the present case the evidence shows beyond question that the sole proximate cause of the accident was the deliberate, willful and dangerous conduct on the part of Shelton in giving the boys standing along the side of the Ford a "close-up"—that is, by attempting to frighten them by driving his car as close as possible to them without striking them; and in doing so he misjudged his distance.

Appellants' second principal ground of appeal is made up of objections to the giving and the refusal to give certain instructions. None of the objections made is of a substantial nature. Their first complaint is directed against three instructions given by the court, and the refusal to give two requested by appellants, relating to respondent's duty to exercise proper care for his own safety while on the street; and the amount of care to be exercised by him and the driver of the car. Appellants contend that the instructions given, reasonably construed, are to the effect that a pedestrian may rightfully place himself in a street, in a position of danger, and then, without taking any precautions for his own safety, do whatever he pleases, regardless of the automobile traffic on the street, and if hit could hold the driver of the car liable for the accident. The instructions do not admit of such construction.

The first of the three challenged merely restated in proper form the general rule that a person must exercise ordinary care for his own safety; and that the degree of care

varies in proportion to the nature of the act and the surrounding circumstances; and that the amount of caution required by the law increases as does the danger that should reasonably be apprehended. The instruction was clearly in accord with well established law (19 Cal.Jur. 579; *Henderson* v. *Los Angeles Traction Co.*, 150 Cal. 689 [89 P. 976]; *Bresee* v. *Los Angeles Traction Co.*, 149 Cal. 131 [85 P. 152, 5 L.R.A. N.S. 1059]; *Casalegno* v. *Leonard*, 40 Cal.App.2d 575 [105 P.2d 125].)

The second instruction was to the effect that while Shelton and Powers were both charged with the exercise of ordinary care, the amount of care required of Shelton at the time of the accident was the greater inasmuch as he was driving a vehicle on a public highway capable of inflicting injury or death. The instruction was clearly proper and contained a correct statement of the law upon that subject. (See *McNear* v. *Pacific Greyhound Lines*, 63 Cal.App.2d 11 [146 P.2d 34], and numerous cases cited therein.)

The third instruction was based upon the law that a pedestrian lawfully on a public highway may rely upon the exercise of reasonable care by drivers to avoid injury, and that he is not bound, as a matter of law, to be continuously looking or listening for approaching vehicles, under penalty that if he fails to do so and he is injured as a result of the negligence of the driver of a vehicle, he shall be precluded from recovering damages for the injuries. (*Erickson* v. *Grady*, 119 Cal.App. 596 [6 P.2d 1002]; *King* v. *Unger*, 25 Cal.App. 2d 632 [78 P.2d 255]; *Devecchio* v. *Ricketts*, 66 Cal.App. 334 [226 P. 11]; *Fowler* v. *Allen*, 49 Cal.App.2d 214 [121 P.2d 41]; *Ramos* v. *Service Bros.*, 118 Cal.App. 432 [5 P.2d 623]; see, also, *Salomon* v. *Meyer*, 1 Cal.2d 11 [32 P.2d 631].) Here as in the case of *Fowler* v. *Allen*, *supra*, the instruction did not contain the proviso that before a pedestrian is entitled to invoke the assumption that the driver of the vehicle will exercise ordinary care, it must appear that the pedestrian himself is exercising ordinary care. In that case it was held, however, that while such an instruction should include such a proviso, the absence thereof does not serve as ground for reversal, if it appears that elsewhere in its instructions the trial court has correctly and adequately instructed the jury upon the law requiring the exercise of ordinary care; and in the present case that was done.

The ground upon which the trial court refused to give

two of appellants' proposed instructions on contributory negligence was that the subject matter thereof was covered by other instructions which were given. The record substantiates such ground of refusal. The first of the proposed instructions merely restated in brief form the general legal principle that one who stands or moves about in a public street without looking in the direction from which traffic might approach is guilty of contributory negligence, which if it contributes proximately to the accident bars a recovery of damages; and the second proposed instruction was to the same effect with the added statement that the pedestrian must continue to be alert; otherwise he is guilty of contributory negligence. There were several instructions given which substantially and correctly covered those legal principles, among them being those hereinabove discussed. Others given upon the subject were proposed by appellants. One of them read: "A pedestrian being on a traveled street is bound to take notice of the conditions of traffic and cannot blindly step into a place of obvious danger."

The next group of instructions complained of relate to the appellant's duty as a driver of a motor vehicle. Four instructions are included in this group; but no objection is made to the first. The second is the same instruction as the second in the group above. Appellants claim that it conflicts with the first, in that the jury was told in effect that the respondent had little or no duty to perform to protect himself, and that Shelton was compelled to exercise a greater amount of care for the protection of the respondent. However, the instruction begins with "while the defendant . . . and the plaintiff . . . are both charged with the exercise of ordinary care. . . ." Under the ruling in *Pinello* v. *Taylor*, 128 Cal. App. 508 [17 P.2d 1039], the instruction was clearly proper for the reason that there the trial court refused to give such an instruction and the judgment in favor of the defendants was reversed.

The next instruction in this group relates to the duties of a driver, and includes the duty to keep the vehicle at such a distance "as to avoid running over him [a pedestrian] in his sudden panic from surprise at knowledge of its unexpected approach." There was sufficient evidence here upon which to base the instruction, for it fairly shows that there was a sudden panic among the boys standing beside the Ford caused by the wanton acts of Shelton. The last one in this group places upon the driver the duty to analyze a dangerous situa-

tion, and the instruction is definitely supported by the case of *Nicolai* v. *Pacific Electric Railway Co.*, 92 Cal.App. 100 [267 P. 758].

██ Appellants next claim error in the refusal to give their proposed instructions on assumption of risk. In *Potts* v. *Crafts*, 5 Cal.App.2d 83 [42 P.2d 87], it was said: "Strictly speaking the assumption of a risk doctrine is applicable to the relation of master and servant. (16 Cal.Jur. 1061.)" And in *Schleif* v. *Grigsby*, 88 Cal.App. 174 [263 P. 255], it was said (p. 182): "This doctrine [assumption of risk] has its general application to the relation of master and servant; and the authorities cited cover cases wherein this relationship existed. However, conceding that the theory underlying the doctrine of assumption of risk may have application to cases outside of this particular relationship of employment, it goes no further than the accepted standard of ordinary care under the circumstances. In other words, the doctrine of assumption of risk in other cases does not absolve the wrongdoer of all blame, but places upon the party injured a higher duty if he voluntarily enters a position of known danger (*Graff* v. *United R. R.*, 178 Cal. 171 [172 P. 603]; *Kelly* v. *Santa Barbara R. R.*, 171 Cal. 419 [153 P. 903, Ann.Cas. 1917C 67] . . .)." In the present case, therefore, it cannot be successfully maintained that it was prejudicial to refuse to give instructions on assumption of risk, since practically all of the legal principles underlying the doctrine of assumption of risk were here given to the jury in the instructions upon contributory negligence and the standard of ordinary care.

██ Appellants next contend that the giving of instructions on the doctrine of the last clear chance was error. No objection is made to the form of the instructions, but it is argued that the essential evidentiary elements necessary to invoke that doctrine were wanting. This argument is not sustainable. The factors which must be present to justify the giving of instructions on the doctrine of the last clear chance have often been stated, and it is quite unnecessary to repeat them here. One of the recent cases in which they are set forth is *Gillette* v. *City and County of San Francisco*, 58 Cal. App.2d 434 [136 P.2d 611], and it is our opinion that under the law as laid down in that case, and in the cases cited therein, the facts of the present case were legally sufficient to warrant the giving of instructions on that doctrine.

██ Appellants also make the complaint that the court

overemphasized the question of damages by giving a large number of instructions thereon, in four of which the jury was told that under the law it could only bring in a verdict for $5,000 (under Veh. Code, § 352(c) limiting the liability of the parents to that amount). Appellants argue that these instructions gave the jury the impression it should return a verdict of $5,000. It appears, however, that the jury was also plainly told that before it could render a verdict in any amount against appellants it must first find that the appellants were liable, and that thereafter it could bring in a verdict for damages, but in no event in excess of the sum of $5,000. In that state of the record it cannot be held as a matter of law that the jury was misled by the giving of the instructions about which appellants complain.

The mistake made by the trial court in telling the jury that the denials in appellants' answers were based on information and belief was harmless, and the point is not stressed as a ground for reversal. Therefore no special attention need be given to it.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.