[Civ. No. 15387. First Dist., Div. One. Apr. 13, 1953.]

RAMON FERNANDEZ, Plaintiff and Respondent, v. CON-
SOLIDATED FISHERIES, INC. (a Corporation), Ap-
pellant; CITY AND COUNTY OF SAN FRANCISCO,
Intervener and Respondent.

256

Hadsell, Murman & Bishop and Joseph L. Alioto for Appellant.

Belli, Ashe & Pinney, Dion R. Holm, City Attorney, and Thomas A. Toomey, Jr., Deputy City Attorney, for Respondents.

PETERS, P. J.—Plaintiff, a street sweeper employed by the city of San Francisco, brought this action for personal injuries alleged to have been caused by the negligence of one Tringali employed by defendant corporation as a truck driver. The city intervened to recover payments made by it to or on behalf of plaintiff under the Workmen's Compensation Act. Pursuant to its construction of the jury's verdict the trial court entered judgment in favor of the plaintiff for $50,000, and in favor of the city for $8,813.87. Defendant corporation appeals.

This is the second trial and appeal in this case. On the first trial the jury brought in a verdict for defendant. A new trial was granted by the trial court because of errors in the instructions. This was affirmed. (*Fernandez* v. *Consolidated Fisheries, Inc.*, 98 Cal.App.2d 91 [219 P.2d 73].) On the present appeal the defendant challenges certain instructions, and also contends that the judgment allows plaintiff and the city a double recovery for certain elements of damage. We find no prejudicial error in the instructions except those that relate to the claims of the intervener, but we do find that under the instructions the jury was erroneously told that it could allow double recovery for certain elements of damage.

The evidence on the two trials was substantially the same. (See the prior opinion for a detailed summary of the evidence on the first trial.) On this appeal, of course, this court must interpret the evidence and the reasonable inferences therefrom in favor of the plaintiff and resolve all conflicts in his favor. So interpreted, the record shows the following:

The accident occurred about 11 a.m. on the clear, dry morning of March 26, 1947, at the intersection of Golden Gate Avenue and Steiner Street in San Francisco. Golden Gate Avenue runs east and west and is a stop street, while Steiner runs north and south. One of plaintiff's duties as street sweeper was to notify persons who drop articles in the street to pick them up. Plaintiff testified that, while acting in the course of his employment and while crossing Steiner Street at its intersection with Golden Gate in the pedestrian lane, he noticed defendant's truck driven by Tringali approaching from the south on Steiner Street. Defendant's truck had a flatbed and an enclosed cab. The tailgate of the truck was down. Plaintiff testified that he then saw on the street about 50 feet in back of the truck, and in the same traffic lane, a large box, that he had the impression and believed that the box in the street was similar to those on the truck, and that he inferred that it had dropped from the truck. While it is admitted that a large box was in fact in the street, there is no direct evidence that the box dropped from defendant's truck. Tringali admitted that, after the accident, he saw the box in the street, but testified that he could account for all boxes on the truck and that the box had not been dropped by him. He admitted that he did not see the box while driving down the street. The evidence on this issue need not be further reviewed. Suffice it to say that the evidence and the reasonable inferences therefrom support the implied findings of the jury that the box dropped from defendant's truck, and that plaintiff reasonably believed that it had so been dropped.

Plaintiff further testified that, upon observing the box, and while the approaching truck was still some distance from the intersection, he started waving his arms and yelling to the driver that he had dropped a box; that the truck pulled about 2 feet into the intersection and stopped; that as the truck approached plaintiff saw Tringali look straight at him; that when the truck stopped plaintiff moved over to the side of the truck and grabbed the door handle and started to open the door opposite to the driver, yelling that the driver had

dropped a box; that Tringali looked straight at him and nodded his head; that while plaintiff still had his hold on the door handle, and while the door was open, Tringali started his truck with a jerk which closed the door; that he was thrown off balance; that he gripped the door handle to keep from being thrown; that he could not get on the running board; that he was dragged some 15 to 20 feet, all the time trying to grab something with his other hand and hollering; that he held on with his right hand to save his life; that he finally lost his grip and tried to throw his body away from the truck; that he fell and the double right rear wheels of the truck ran over him. The truck then stopped. Plaintiff was then in the street about 15 feet in back of the truck. He suffered severe, permanent and disabling injuries.

Tringali testified that he did not see plaintiff at all until after the accident. This, and other testimony by this witness, was obviously not believed by the jury. It must have believed that Tringali saw plaintiff, knew he was at the side of the truck and opening the door, but started up in reckless disregard of plaintiff's safety. He heard, or should have heard, plaintiff yelling at him. Defendant argues that there was no need for plaintiff to continue to hold onto the door handle after the truck started, and that he needlessly continued to hold on in mere stubbornness. It was a jury question as to whether plaintiff acted as a reasonable man in continuing to hold onto the handle. It is easy enough for defendant, in retrospect and with plenty of time for analysis, to figure out how plaintiff could have avoided being hurt. But, because of Tringali's actions, plaintiff did not have any time to think or to analyze the possibilities. The jury evidently believed that when the truck started up plaintiff was thrown off balance, retained his hold on the handle to keep from being thrown, and that such actions were reasonable under the circumstances. These beliefs are supported by the evidence and the reasonable inferences therefrom. They cannot be successfully attacked on this appeal.

Before discussing the major contention made on this appeal in reference to the claimed double award of certain elements of damage, the contentions of appellant in reference to the other matters should first be considered.

There exists in San Francisco an ordinance prohibiting the throwing of rubbish in the street. A copy of this, and other related ordinances, is contained in a booklet given to every street cleaner. This ordinance was introduced into evidence

and the trial court gave an instruction based upon it. The defendant made no objection to its introduction except as to one inapplicable sentence which the plaintiff voluntarily deleted. ■ Defendant having made no objection is now in no legal position to urge that no proper foundation was laid for its introduction. (See cases collected 3 Cal.Jur.2d 634, § 156.)

The instruction reads as follows:

"The plaintiff has offered into evidence and you must accept it now as the law, that ordinance of the City and County of San Francisco, to-wit, Section 33, which was in effect at the time of the accident in question:

" 'Rubbish, etc.—Throwing on streets prohibited.

" 'It shall be unlawful for any person or persons to put, place, sweep, throw, brush or in any other manner deposit any rubbish, paper, cards, newspapers, wrapping, or any wrapping paper whatsoever of any kind, string, cord, rope or other binding or fastening material, sweepings, dirt or debris or discarded material of any kind or character upon any sidewalk, alley, street, gutterway or other public place in the City and County of San Francisco.'

"Further, I charge you that if the defendant corporation, Consolidated Fisheries, Inc., through its agent and driver, Carmelo Tringali, violated, whether knowingly or unknowingly, this section of law on the 27th [26th] day of March, 1947, at Steiner Street and Golden Gate Avenue in the City and County of San Francisco, then you may consider this fact, if you find it to be a fact, among other circumstances, in determining whether the defendant was negligent."

■ Defendant claims that the instruction is erroneous because there is insufficient evidence that the box dropped from the truck and because, even if it did, there is no evidence that the box was a proximate cause of the accident. These contentions are without merit. The testimony of plaintiff as to the location of the box in the highway, its similarity to the boxes in the truck, and Tringali's testimony that he had not seen the obviously visible box in driving down the street, permits the reasonable inference that the box had been dropped from the defendant's truck.

■ So far as proximate cause is concerned it is apparent that if the jury found, as it apparently did, that the box dropped from the truck, then it could find that the dropping of the box was a link in the chain of causation. The ordinance, among other things, was intended to prohibit the drop-

ping of rubbish or boxes in the street. ▮ The plaintiff as a street sweeper was obviously one of the group intended to be protected by the ordinance. It is reasonable to suppose that, among other things, the ordinance was intended to protect those working in the streets from traffic hazards.

Defendant cites and places some reliance on the decision of this court in *Noble* v. *Cavalier Restaurant*, 106 Cal.App.2d 518 [235 P.2d 396], where the same ordinance was introduced and an instruction given to the effect that violation of the ordinance constituted negligence *per se*. ▮ Here the instruction merely told the jury that it could consider such violation, if found to exist, "among other circumstances, in determining whether the defendant was negligent."

This court, in the Noble case, did assume that it was "doubtful if these sections are applicable to the situation here" (p. 527) but then continued: "These sections apparently require that the deposit of rubbish on a sidewalk be an intentional act. . . . Assuming that the reading of these sections was error, it was error without prejudice. Under the facts of this case the dropping of the material in question by defendants in removing it from the restaurant could only have been negligently done. Hence, once the jury found that it was dropped when the cans were carried out, a finding of negligence must necessarily follow, and the court's intimation that it might be a violation of the ordinance and hence negligence as a matter of law was not prejudicial."

This reasoning applies equally to the present case, and to the further contention that it was error to tell the jury that the ordinance could be violated "knowingly or unknowingly." If the jury could reasonably find that the box fell from the truck, and we have already held that it could, then under the evidence, the defendant must have been negligent in dropping the box. The only explanation in the evidence as to why the box dropped is that the tailgate of the truck was down. It follows, therefore, that the jury could find that this was negligence and that is so whether defendant knew or did not know that the box had actually fallen. Although the choice of words used is not to be commended, this is the most reasonable interpretation of the instruction. In view of the fact that no objection was made to the introduction of this ordinance, and no clarifying instruction offered, it cannot be held that the giving of the challenged instruction was prejudicial error.

█ Defendant next objects to the following instruction: "The amount of care required of the defendant corporation's driver, Carmelo Tringali, as the driver of a truck along a public highway, was greater than the amount of care required of plaintiff, Ramon Fernandez, as a pedestrian. The driver of a motor vehicle is in charge of a dangerous instrumentality capable of inflicting serious and often fatal injuries, and for that reason he is charged by law with a greater amount of care than the pedestrian."

In connection with this instruction defendant also objects to one stating that no person shall start a vehicle unless it can be done with "reasonable safety," and to another to the effect that a driver must use ordinary care in the operation of his vehicle to avoid "collisions." It is argued that a standing truck is not a dangerous instrumentality and that the plaintiff collided with the truck rather than the truck colliding with him. It is also urged that on the previous appeal it was determined that the reasonably prudent man standard was applicable to plaintiff. These contentions are without merit. To contend that plaintiff collided with the standing truck of defendant is patently contrary to the evidence. The contention that the instructions here given are contrary to those passed upon on the prior appeal is equally without merit. The problem under discussion was not involved, passed upon or discussed on the prior appeal.

The defendant contends that the quoted instruction erroneously imposes a higher standard of care upon defendant than it does on plaintiff. This is not the first time that this criticism has been levelled at the concept involved in this instruction. Quite generally the instruction has been upheld, or, at least, it has been held that the giving of it was not prejudicial. (*Powers* v. *Shelton,* 74 Cal.App.2d 757 [169 P.2d 482]; *De Victoria* v. *Erickson,* 83 Cal.App.2d 206 [188 P.2d 276]; see, also, *McNear* v. *Pacific Greyhound Lines,* 63 Cal.App.2d 11 [146 P.2d 34].) It was not prejudicial error to give the instruction in the present case.

█ The contentions that plaintiff was guilty of contributory negligence as a matter of law, or that plaintiff assumed the risks of his position as a matter of law, are but different ways of stating the same contention. The evidence already summarized demonstrates to a certainty that the questions of negligence and contributory negligence were fact questions for the jury. The trial court, therefore, properly refused to decide them as questions of law.

Defendant next points out that the law does not require a workman in the street to exercise the same vigilance required of a pedestrian, and then contends, at some length, that plaintiff must be held to the standard required of pedestrians. We have some difficulty in ascertaining just what defendant is trying to establish by this contention. The jury was not instructed as to the "workman in the street" doctrine. In fact the trial court rejected an instruction proposed by the plaintiff based on this theory. An examination of the instructions discloses that plaintiff throughout the charge was treated as a pedestrian.

This brings us to the contention that the trial court failed to compel the segregation of some items of damage for which the plaintiff had been compensated by the intervener. Admittedly, the city, as plaintiff's employer, paid to or for plaintiff, under the Workmen's Compensation Act, for compensation or medical care, the sum of $8,813.87. There is no challenge of the amount of such payments, and it is agreed that if plaintiff recovers, the intervener is entitled in some way to a recovery in that amount.

The jury brought in the following verdict: "We, the jury in the above entitled cause, find a verdict in favor of Plaintiff Ramon Fernandez for the sum of $50,000.00; in favor of Plaintiff in Intervention City and County of San Francisco, a municipal corporation, for the sum of $8,813.87, and against defendant Consolidated Fisheries, Inc." By this verdict, according to defendant, the jury intended to bring in a total verdict of $50,000, the $8,813.87 due the city to be deducted from that sum. The trial court, however, interpreted the verdict as one of $50,000 to plaintiff and an additional $8,813.87 to the intervener, and entered its judgment accordingly on October 26, 1951. On November 5, 1951, defendant filed a notice of intention to move for a new trial upon most of the grounds permitted by law. In support of this motion affidavits of 10 of the jurors were filed December 18, 1951. Each affidavit averred that it was the juror's intention to vote for a total verdict of $50,000. In addition, defendant has presented to this court letters from each of the remaining two jurors who did not sign affidavits to the effect that the writers had a similar understanding of the verdict. On December 18, 1951, by minute order, and on December 20, 1951, by formal order, the motion for a new trial was denied. In its formal order the court denied the offer of the 10 affidavits, and stated that the affidavits had not been considered by it.

It is defendant's theory that the verdict, properly interpreted, provided for a total award of $50,000, and that these affidavits should have been considered on the motion. Refusal to consider them, so it is argued, was error entitling defendant to a new trial.

The trial court properly refused to consider the affidavits for at least two reasons. ██ In the first place, whatever the rule may be in other states (see 64 C.J. p. 1108, § 914), the rule is well settled in California that affidavits of jurors may not be used to impeach or to interpret the verdict, except to show that it was arrived at by chance. (*Phipps* v. *Patterson,* 27 Cal.App.2d 545 [81 P.2d 437] ; *Mish* v. *Brockus,* 97 Cal.App.2d 770 [218 P.2d 849] ; *Fitzpatrick* v. *Himmelmann,* 48 Cal. 588.) ██ If the verdict is ambiguous the party adversely affected should request a more formal and certain verdict. Then, if the trial judge has any doubts on the subject, he may send the jury out, under proper instructions, to correct the informal or insufficient verdict. (Code Civ. Proc., § 619; *Curtis* v. *San Pedro Transp. Co.,* 10 Cal. App.2d 547 [52 P.2d 528] ; *Phipps* v. *Superior Court,* 32 Cal. App.2d 371 [89 P.2d 698].) ██ Otherwise, it is the function of the trial judge to interpret the verdict from its language considered in connection with the pleadings, evidence and instructions. (*Curtis* v. *San Pedro Transp. Co.,* 10 Cal.App.2d 547 [52 P.2d 528].) In the present case the trial court, in our opinion, correctly interpreted the verdict.

The second reason why the affidavits were properly rejected by the trial court is to be found in the provisions of section 659a of the Code of Civil Procedure. That section requires that affidavits in support of the motion must be filed "Within ten (10) days after serving the notice. . . . The time herein specified may . . . be extended by any judge for an additional period of not exceeding twenty (20) days." The affidavits here involved were filed about six weeks after the notice of intention to move for a new trial. No extension of time for any period appears in the record. Under these circumstances the trial court could properly reject the affidavits. (*Sitkei* v. *Frimel,* 85 Cal.App.2d 335 [192 P.2d 820].)

██ The impropriety of filing the copies of the two letters with this court is too apparent to require discussion. Not only are they not authenticated, but they are not properly part of the record on appeal and have not been considered.

The defendant next contends, apparently, that, as a matter of law, the trial court was prohibited from allowing the in-

tervener an independent recovery, but was limited to a determination that the employer's claim was a lien upon and must be satisfied out of the amount awarded plaintiff. Defendant then urges that the trial court must so segregate the items of damage that a double recovery is not allowed against the tort feasor.

There can be little doubt but that, in a case where an employer intervenes in the employee's action for reimbursement of compensation payments paid to the employee, separate judgments may be rendered in favor of the employer and employee. The pertinent statutes of the Labor Code are the following:

"3852. The claim of an employee for compensation does not affect his claim or right of action for all damages proximately resulting from such injury or death against any person other than the employer. Any employer who pays, or becomes obligated to pay compensation, or who pays, or becomes obligated to pay salary in lieu of compensation, may likewise make a claim or bring an action against such third person. In the latter event the employer may recover in the same suit, in addition to the total amount of compensation, damages for which he was liable including all salary, wage, pension, or other emolument paid to the employee or to his dependents."

"3853. If either the employee or the employer brings an action against such third person, he shall forthwith give to the other written notice of the action, and of the name of the court in which the action is brought by personal service or registered mail. Proof of such service shall be filed in such action. If the action is brought by either the employer or employee, the other may, at any time before trial on the facts, join as party plaintiff or shall consolidate his action, if brought independently."

"3856. The court shall first apply, out of the entire amount of any judgment for any damage recovered by the employee, a sufficient amount to reimburse the employer for the amount of his expenditures for compensation. If the employer has not joined in the action or has not brought action, or if his action has not been consolidated, the court, on his application shall allow, as a first lien against the entire amount of any judgment for any damages recovered by the employee, the amount of the employer's expenditures for compensation."

Under these sections, although the lien procedure is permitted, it is not the exclusive remedy. The employer, in addi-

tion, is permitted to bring an independent action, to consolidate his action with that of the employee or to intervene in the employee's action. (*Limited Mut. Comp. Ins. Co.* v. *Billings,* 74 Cal.App.2d 881 [169 P.2d 673]; *City of Los Angeles* v. *Howard,* 80 Cal.App.2d 728 [182 P.2d 278]; *Pacific Indem. Co.* v. *California, Etc., Ltd.,* 29 Cal.App.2d 260 [84 P.2d 313]; *State Comp. Ins. Fund* v. *Matulich,* 55 Cal.App. 2d 528 [131 P.2d 21].) In any of these situations an independent judgment may be rendered.

But defendant is correct in contending that the Labor Code sections comprehend a theory of segregation of items of damage so as to prevent a double recovery against the tort feasor. All the relevant cases so hold. (*Eckman* v. *Arnold Taxi Co.,* 64 Cal.App.2d 229 [148 P.2d 677]; *Limited Mut. Comp. Ins. Co.* v. *Billings,* 74 Cal.App.2d 881 [169 P.2d 673]; *State Comp. Ins. Fund* v. *Dalton,* 13 Cal.App.2d 284 [56 P.2d 962]; *Pacific Indem. Co.* v. *California Etc., Ltd.,* 29 Cal.App.2d 260 [84 P.2d 313].)

In the light of this rule requiring segregation and prohibiting a double recovery defendant complains of certain instructions, contending that they failed to require segregation of certain items of damage. With this contention we agree.

Particular objection is made to the following instruction, the first two paragraphs of which were offered by the intervener and the last paragraph added by the court. The three paragraphs read as follows:

"There is no dispute herein as to the amount paid by the plaintiff in intervention, City and County of San Francisco, under the provisions of the Workmen's Compensation Law for disability indemnity and medical care rendered to plaintiff, Ramon Fernandez.

"You are instructed that if you find that plaintiff, Ramon Fernandez, was employed by the plaintiff in intervention, City and County of San Francisco, a municipal corporation, at the time he sustained the alleged injuries which are the basis of this action, and that said alleged injuries were incurred in the course and scope of his said employment, and if you further find that plaintiff, Ramon Fernandez, is entitled to a verdict against defendant Consolidated Fisheries, Inc., a corporation, under the instructions herein given you, then you must return a verdict for the plaintiff in intervention, City and County of San Francisco, a municipal corporation, and against the defendant Consolidated Fisheries, Inc., a corporation, in the amount of $8,813.87, for disability indemnity

and medical expenses paid by plaintiff in intervention, City and County of San Francisco, to plaintiff Ramon Fernandez.

"In other words, if you find in favor of the plaintiff, then you should also find in favor of the City and County of San Francisco in the amount I have just indicated."

Almost immediately prior to this quoted instruction the trial court instructed: "One of the elements of damage which you may consider is the reasonable value of the time lost, if any, by the plaintiff since he has been unable to pursue his occupation. In determining this amount, you should consider evidence of said plaintiff's earning capacity, his earnings and the manner in which he ordinarily occupied his time before the injury, and find what he was reasonably certain to have earned in the time lost had he not been disabled."

While in some of its other instructions the trial court did list some of the items of damage recoverable by plaintiff, nowhere did it limit the damages recoverable by the plaintiff to items not recoverable by the intervener—in fact, the last quoted instruction contains a direction to include such damages in plaintiff's recovery.

The authorities sustain defendant's contention that these instructions are erroneous as authorizing a double recovery. In *Jacobsen* v. *Industrial Acc. Com.*, 212 Cal. 440 [299 P. 66], it was so held and it was further suggested that the jury should be asked to segregate damages by the instructions or by means of special interrogatories. (See, also, *Sherrillo* v. *Stone & Webster Eng. Corp.*, 110 Cal.App.2d 785 [244 P.2d 70].) In *Eckman* v. *Arnold Taxi Co.*, 64 Cal.App.2d 229 [148 P.2d 677], it was held that failure to segregate in the damage instructions was reversible error. The instructions there involved were substantially similar to those here involved. The jury was told that if it found for the plaintiffs to award to them as heirs of the deceased employee compensation for the pecuniary loss suffered by the death of the employee, and was then told to award the insurance carrier of the employer the amount of the death benefit. The jury returned a verdict in separate sums. The court held that there was a double recovery involved, that such was prohibited, and then held that this was error even though the evidence had come in without objection. The court stated (p. 234): "But the question here involved is not one of admissibility of evidence; nor is it merely one of segregation of damages. The question here presented is one involving the substantive right of the defendants in the case to protection against double indemnity

for the damages caused by the wrongful death of decedent. While the damages assessed in favor of the respective plaintiffs might indicate that the jury, in assessing damages to the heirs, had taken into account the death benefits awarded as compensation, yet it is impossible upon the record to conclude that such was the case. In view of [the failure of] the instructions, as given, to state that the amount of damages awarded the heirs represented merely the balance after deduction of the amount awarded the insurer, would be to indulge in pure speculation. It must be held, therefore, that the trial court erred to the prejudice of appellants in improperly instructing the jury upon the question of damages.''

The court thereupon remanded the case for a new trial on the issue of damages alone.

It is apparent that under the instructions here given, the jury was not required to segregate the items of damage, and that some of such items could have been awarded to both plaintiff and intervener, thus permitting a double recovery which is prohibited by law. This would normally require a reversal, and the ordering of a new trial. Such new trial, where no error has been committed on the issue of liability, should normally be restricted to the issue of damages alone. But in the instant case the maximum double recovery suffered by defendant was the total of intervener's judgment —that is, $8,813.87. On the oral argument, counsel for plaintiff stipulated that, if the instructions were held to be prejudicially erroneous for the reason that they permitted double recovery, he preferred that this court reduce the $50,000 verdict by the full amount of intervener's judgment, rather than order a new trial on the issue of damages alone. Such solution fully protects the defendant and saves the parties the necessity of another trial of this lengthy litigation.

For the foregoing reasons the judgment is modified by reducing the award in favor of plaintiff from $50,000 to $41,186.13. The award in favor of the intervener in the amount of $8,813.87 shall remain unchanged. The interest on both awards shall run from October 26, 1951. Trial costs of $441 are awarded to plaintiff. Each litigant shall bear his own costs on this appeal. As so modified, the judgment is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 11, 1953.